# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARIA WOLF, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GC SERVICES LIMITED PARTNERSHIP, <br><br> Defendant. | Case No.: 20-cv-900 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Maria Wolf is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, including clothing purchases.

5. Defendant GC Services Limited Partnership ("GCS") is a debt collection agency with its principal offices located at 6330 Gulfton, Houston, TX 77081.

6. GCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. GCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. UCB is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

8. On or about June 16, 2019 mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Department Stores National Bank" ("DSNB"). A copy of this letter is attached to this Complaint as Exhibit A.

9. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family, or household purposes, including purchases of clothing and other personal goods at "Macy's" stores.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Exhibit A was the first letter GCS sent to Plaintiff regarding this alleged debt.

12. The reverse side of Exhibit A includes the following representation which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> CONSUMER INFORMATION:
> Unless you, within thirty (30) days after your receipt of this letter, dispute the validity of the debt, or any portion thereof, we will assume the debt to be valid. If you notify us in writing within the above described thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you. Additionally, upon your written request within the above described thirty (30) day period, we will provide you with the name and address of the original creditor, if it is different than the current creditor.
>
> The request for you to pay the balance owed in this letter does not reduce your rights to dispute this debt, or any portion thereof, and/or to request verification within the thirty (30) day period as set forth above.

13. GCS' letter as a whole is confusing and misleading to the unsophisticated consumer.

14. Exhibit A includes the following representations:

> New Balance: $3,575.66
> Minimum Payment Due: $3,575.66

15. Exhibit A also includes the following representations:

> This letter shows your minimum payment amount currently due. If you are making a payment, please send us your payment using the enclosed envelope, and, if paying by check, make your check payable to "Department Stores National Bank (DSNB)".
>
> We are here to work with you to find a mutually agreeable solution. We invite you to contact us so that we can discuss your particular financial circumstances, as well as opportunities our client may have available for you. Please contact us at 866-804-3919 to discuss payment options that may be available to you on your account.

16. Exhibit A, thus, informs the unsophisticated consumer that GCS is "here to work with [her] to find a mutually agreeable solution," while at the same time, stating that the minimum payment she may make is the entirety of the balance.

17. Exhibit A is confusing to the unsophisticated consumer because there cannot be other opportunities available if the "minimum payment" is in the amount of the entire balance.

18. Moreover, the alleged debt here is an unsecured credit card account and, upon information and belief, GCS and DSNB would accept any payment of any amount at any time.

19. Additionally, the use of the term "New Balance" implies that the amount of the debt is increasing. In order for a "New Balance" to be meaningful, there must be an "old" balance that is a different amount.

20. Upon information and belief, DSNB had accelerated the balance of Plaintiff's account before transferring the account to GCS for collection.

21. On the face of Exhibit A it is impossible to determine whether the New Balance is continuing to accumulate interest and/or fees.

3

22. The unsophisticated consumer understands that credit card debts may accrue interest and fees, and the references in <u>Exhibit A</u> to the "New Balance" would undoubtedly make the consumer wonder whether the account was bearing interest and fees. *See Deporter v. Credit Bureau of Carbon County*, 2015 U.S. Dist. LEXIS 55345, at *15-16 (D. Colo. Apr. 28, 2015) (collecting cases and explaining that, in the context of credit card debts, the FDCPA does not place an "affirmative duty to disclose the accrual of interest because 'even the most unsophisticated consumer would understand that credit card debt accrues interest.'").

23. <u>Exhibit A</u> fails to state the amount of the debt in a non-confusing manner. The unsophisticated consumer would be confused as to whether GCS was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

24. The unsophisticated consumer would have no idea whether GCS was attempting to collect interest and fees, and would feel intimidated into calling GCS to resolve the account as soon as possible because of the specter of accruing interest and/or fees.

25. Upon information and belief, the alleged DSNB debt charged off before DSNB sent the account to GCS for collection. Plaintiff's account is not bearing post-charge-off interest or fees. *See, e.g., Nugent v. AllianceOne Receivables Mgmt.*, 2015 U.S. Dist. LEXIS 181175, at *2-3 (W.D. Mo. Nov. 15, 2015); *see also, Delgado v. Client Servs.*, 2018 U.S. Dist. LEXIS 37711, at *1-2 (N.D. Ill. Mar. 7, 2018) (Capital One account was not bearing post-charge-off interest).

26. Upon information and belief, when the alleged DSNB debt charged off, DSNB ceased mailing periodic statements, waived its right to collect interest on this account. *See* 12 C.F.R. § 226.5(b)(2)(i); *Wilder v. J.C. Christensen & Assocs.*, 2016 U.S. Dist. LEXIS 168440, at *15-16 (N.D. Ill. Dec. 6, 2016) (discussing waiver); *compare, e.g., Ruge v. Delta Outsource*

*Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 (N.D. Ill. Mar. 13, 2017 ("A jury could not find implied waiver based on the two months that Comenity Bank did not charge interest ….") *with, e.g., Stubbs v. Cavalry SPV I, LLC*, 2015 U.S. Dist. LEXIS 2230, at *2-3, *7 (whether original creditor waived post-charge-off interest by not charging post-charge-off interest for two years was a jury question).

27. A debt collector that has been hired to collect a specific balance and interest and fees are not accruing on the account does not state the balance in a clear, nonconfusing manner when it instructs the consumer to telephone the debt collector "for an exact amount" owed. *E.g., Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004).

28. Plaintiff was confused by Exhibit A.

29. The unsophisticated consumer would be confused by Exhibit A.

30. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

31. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

5

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

32. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

33. Misrepresentations of substantive information about the debt collector or the debt, including the timing of deadlines for settlement offers, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the

7

FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

34. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

35. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

36. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

37. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

38. 15 U.S.C. §1692g(a) provides, in relevant part:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

## COUNT I – FDCPA

39. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

40. GCS represented the amount of the debt that GCS was attempting to collect in a confusing manner by failing to resolve the apparent contradiction between the minimum payment due being the entirety of the balance and the Plaintiff having other payment options available. Exhibit A.

41. The unsophisticated consumer would be confused as to whether GCS was authorized to approve a payment schedule that called for payments less than the "minimum payment due."

42. The unsophisticated consumer would also be confused as to whether the minimum payment due was subject to day-to-day increases as interest, late fees, and/or other charges accrued.

43. GCS's conduct violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f), and 1692g(a)(1).

## CLASS ALLEGATIONS

44. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt owed to DSNB, (d) between June 15, 2019 and June 15, 2020, inclusive, (e) that was not returned by the postal service.

45. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

46. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

47. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

48. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

49. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

50. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 15, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000  
(414) 482-8001 (fax)  
jblythin@ademilaw.com  
meldridge@ademilaw.com  
jfruchter@ademilaw.com  
bslatky@ademilaw.com

11